# Exhibit 7

Alex Magid Dep. (Nov. 11, 2014), 126:7, 145:3, 152:9, 159:9, 210:11-19, 236:17, 238:8-14, 238:24-25, 240:3, 254:25 thru 255:1-2

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF OKLAHOMA
 2

 3   ZHN, LLC,                           )
                                         )
 4              Plaintiff,                )    Case No. CIV-12-1289-M
                                         )
 5   VS                                  )
                                         )
 6   (1) RANDY MILLER, LLC,              )
     (2) RANDY L. MILLER,                )
 7   (3) Lippard AuctionsEERS, INC.,     )
     (4) TROY LIPPARD,                   )
 8   (5) ANGIE LIPPARD,                  )
     (6) BRADY LIPPARD, and              )
 9   (7) JERRY WHITNEY                   )
     (8) UNITED COUNTRY REAL ESTATE      )
10       INC., d/b/a UNITED COUNTRY      )
         AUCTION SERVICES and UNITED     )
11       COUNTRY REAL ESTATE SERVICES,)
                                         )
12              Defendants.              )
     -----------------------------------
13

14                         DEPOSITION OF

15                       ALEXANDER MAGID

16                    OKLAHOMA CITY, OKLAHOMA

17                      NOVEMBER 11, 2014

18

19
     ATKINSON-BAKER, INC.
20   COURT REPORTERS
     (800) 288-3376
21   www.depo.com

22   REPORTED BY:        DARLENE K. MAY, RPR,
                         MI-CSR 6479, TX-CSR 9026,
23                       OK-CSR 1952

24

25   FILE NO.:   A80C389
```

1  going to retain -- whoever made the decision.
2  　　　　Tract 44 was offered back to me at my bid. Tract 42
3  I believe was offered to Mark Lubmeier (ph) and Tract 43, the
4  price was too low so rather than going to the high bidder, they
5  offered it to me for 130.
6  　　　　MR. HARMON: Move to strike that answer as
7  nonresponsive and self-serving.
8  BY MR. HARMON (Continued):
9  　　Q.　My question is at some point still during the
10 auction, you were offered not in combination but separately
11 Tract 44?
12 　　A.　I was offered Tract 44 after -- I mean, we were
13 talking about high bidder when you asked the question. So,
14 yes, I was offered Tract 44.
15 　　Q.　And that was at your high bid amount?
16 　　A.　Yes.
17 　　Q.　And then you were offered Tract 43. And is the
18 $130,000 a bid amount that you had bid or is that a negotiated
19 amount on the phone?
20 　　A.　It was a negotiated amount on the phone. The offer
21 was made at that price.
22 　　Q.　Had you bid on Tract 43 in the auction before
23 purchase of Tract 44?
24 　　A.　Had I bid?
25 　　Q.　Yes. Had you made a bid?

1 bid.
2     Q. Well, without question in your mind.
3     MR. HARMON: So I'll move to strike the editorial.
4 BY MR. HARMON (Continued):
5     Q. In terms of the calculation, so we've got two bids.
6 You're saying the 25 cents bid is the last valid bid in an
7 absolute auction. So that's the price of the property. So how
8 does that get us to -- then, to the calculation for your
9 surface damage is where we were walking through?
10     A. Well, can I walk you through? So just follow the
11 several examples and that will become very clear.
12     Q. So 25 cents for lot seven is the sales price?
13     A. 25 cents is the last good faith bid prior to the
14 first illegal bid on Tract 7.
15     On Tract 3 you have --
16     Q. Hang on. So on Tract 7, prior to the bid that you
17 contest, 25 cents is the last legal bid. So, therefore,
18 that's -- or strike that.
19     On Tract 7, prior to the bid that you contest, 25
20 cents was the only bid and because that's the only bid and it's
21 an absolute auction, the value you would assign on Tract 7,
22 even though Tract 7 isn't one in your damage model, would be 25
23 cents.
24     A. That's the value of the last valid bid. In absolute
25 auction, no minimum no reserve, that's the sale price.

1 bidder that places a bid of 125,000. That bid of 125,000 is
2 fraudulently induced. It does not increment the sale price.
3 The sale price stays at $25. The buyer is whoever placed that
4 bid.
5     In this particular instance, Tract 32, a similar
6 thing happened to tract --
7 BY MR. HARMON (Continued):
8     Q. Okay. There's no question pending and I'm going to
9 move to strike that answer as nonresponsive.
10     On Tracts 32 and 33 on the next page, the combined on
11 page two of your example. There is no Lippard bid on those, on
12 the combined. So --
13     A. Well, we don't know that. What we do know is the
14 combination, the opening price on the combination.
15     Q. On your piece of paper here, your Exhibit 5, under
16 the combined 32 and 33, there are no entries for Lippard on
17 this column, correct?
18     A. Lippard is not listed, correct.
19     Q. Okay. So is it your allegation that that bid is also
20 tainted because the individual tracts of 32 and the individual
21 tract of 33 did have Lippard bidders?
22     A. Correct.
23     Q. Okay. So even though the combination would have sold
24 to bidder 217, your testimony is that the combination is
25 tainted as well?

```
1       Q.   What is missing from that conversation that we
2  haven't talked about ad infinitum at this point?
3       A.   My understanding of the law is that in the event in a
4  tainted auction.
5       Q.   Which you're the -- we've been through your
6  understanding of the law.  Do we need to say it again?
7            THE WITNESS:  I don't know.  Do I?
8            MR. ABOWITZ:  Is there a question?
9            MR. LONG:  I'm going to object to the nonresponsive
10 to the questions.  He's been asked repeatedly what's the
11 formula.
12           MR. ABOWITZ:  What's the last question?
13 BY MR. HARMON (Continued):
14      Q.   The last valid question was what additional aspects
15 to the formula is there besides what we've already talked
16 about?
17      A.   Well, as I was answering, there's a method for
18 determining the last valid bid, which you don't like, I
19 understand.  Then there is the formula for calculating the
20 damages.  The formula was explained before, but we -- I mean,
21 do I understand --
22      Q.   You take what you consider the last valid bid and
23 then you take the estimated fair market value from your expert.
24 You subtract from that what you have determined to be the last
25 valid bid.  Then you add to that income from the property and
```

1  A.  I explained what I mean by -- if I take his responses
2  for request for production at face value, that he is telling
3  the truth, then the documents that were in his possession that
4  were responsive at one point are no longer in his possession.
5  Something happened to those documents. I don't know what
6  happened to them.
7         Alternatively, he's not telling the truth in his
8  response to request for production. It's one or the other.
9  Q.  Are you done with your answer?
10 A.  Yes.
11       MR. LONG: I want to move that that answer be
12 stricken as not responsive to the question.
13 BY MR. LONG (Continued):
14 Q.  And I want to ask you, sir, and tell you again that
15 this will go quicker if you will limit your responses to the
16 questions that I ask. My last question to you to which you
17 gave what I believe to be an unresponsive answer was what
18 documents did he get rid of. And you're the one that said he
19 got rid of documents.
20 A.  My question to you: What do you mean by getting rid
21 of?
22 Q.  My question -- you don't get to ask questions.
23 A.  Well, I get to at least -- can you clarify your
24 question?
25 Q.  No, sir. I can ask you questions. If you can't

1 after the contract was signed.
2     Q.  That doesn't tell me anything.
3     A.  Which was later.
4     Q.  So you didn't -- so the answer to my question is, you
5 didn't post the 10 percent the day of the auction, did you?
6     A.  I just -- what is it?
7     Q.  Answer the question directly, please.
8     A.  What is the question?
9     Q.  Third time, you did not deposit the 10 percent down
10 required by the terms of the sale the day you purchased the day
11 one properties?
12     A.  And the answer, the contract was not signed and the
13 wire was not sent on day one. So --
14     Q.  And I'm going to add -- are you done?
15     A.  I'm done.
16     MR. LONG: I'm going to ask that the answer be
17 stricken as nonresponsive to the question.
18 BY MR. LONG (Continued):
19     Q.  Regardless of when the contract was signed, you did
20 not post 10 percent down the day of the auctions as the terms
21 and conditions of the auctions stated, did you, sir?
22     MR. ABOWITZ: Asked and answered.
23 BY MR. LONG (Continued):
24     Q.  So state it again so it's clear to your attorney.
25     A.  The wire was not sent on day one. If that's what you

```
 1      Q.   Okay.  We're not in the state of Kansas.
 2      A.   Well, it is my understanding that money cannot be
 3  deposited unless the contract is signed and nobody stated
 4  anything to the contrary to me.  I pointed out the errors to
 5  the --
 6      Q.   Yes, sir.
 7      A.   -- auction company.
 8           MR. ABOWITZ:  Let him finish.
 9           MR. LONG:  No.  Because it's non -- okay. Go ahead.
10           MR. ABOWITZ:  It is responsive.
11           MR. LONG:  I'll ask it be stricken as nonresponsive.
12           MR. ABOWITZ:  It is responsive.
13           Finish your answer?
14           MR. LONG:  That your opinion.
15      A.   I pointed out the errors in the contract and the
16  representative of Lippard Auctions agreed to correct it.
17           The corrected contract was sent to me.  I believe it
18  took awhile for everybody to initial it.  I believe Randy
19  Miller was out of town.  That was the excuse that was used.
20  That's what I was told.  When the contract was finally
21  delivered to me.  It was signed and the earnest deposit was
22  made and nobody raised any objections until after the lawsuit
23  was filed.
24           MR. LONG:  Move the answer be stricken as
25  nonresponsive.
```

```
1   until the next day.  My participation was accepted.
2        Q.    See that's not the question.
3             MR. LONG:  Move that be stricken as nonresponsive.
4   BY MR. LONG (Continued):
5        Q.    Now, day two.  You purchased properties day two.
6   And, again, after you made the purchase on day two you didn't
7   deposit the money, the 10 percent down as required by the terms
8   and conditions of sale of real estate.  Did you?
9        A.    I don't believe that's correct.
10       Q.    What's not correct about what I just stated?
11       A.    You stated that I did not deposit the money as
12  required by terms and conditions of real estate.  I did not
13  receive -- I believe that was a Friday.  I did not even receive
14  the contract until Monday.
15       Q.    Yes, sir.  Same page, same exhibit.  Where in there
16  does it excuse your paying a 10 percent down until you have a
17  contract?  I've already established this, but we can do it
18  again.
19       A.    There's nothing here that states that.
20       Q.    There you go.  And you didn't do it?
21       A.    I didn't do what?
22       Q.    You didn't put 10 percent down the day of the auction
23  as stated here in the auction materials?
24       A.    Yeah.  I did not send the wire the day of the
25  auction.  I did not send the wire until the contracts were
```

1     A.    Can I review the Interrogatories?

2     Q.    Nope. You made a statement that Mr. Miller lied on

3 his interrogatories. Do you recall making that statement?

4     A.    Yes, I do.

5     Q.    And when you made it under oath you believed it to be

6 true, did you not?

7     A.    Yes.

8     Q.    Okay. But you can't tell us what lies he made in his

9 Interrogatories without looking at them. You just know that he

10 lied?

11     A.    Well, I just listed -- I just listed one.

12     Q.    Yeah. The question was any others that you haven't

13 listed?

14     A.    Well, again, may I review the Interrogatories?

15     Q.    No, sir. So, again, without reviewing the

16 Interrogatories, you can't tell us if there are any additional

17 lies other than the ones that you've told us in his

18 interrogatory responses; is that what you're trying to tell me?

19     A.    No. Let me -- if you give me a second. Well, I

20 believe he responded there were no agreements between him or

21 any of his entities and Derrick Matthew. That's proven not to

22 be true.

23         I'm thinking what else he stated.

24         He stated that the --

25         MR. LONG: I'm going to ask that the part about

```
1   proven not to be true is being stricken as unresponsive.
2   BY MR. LONG (Continued):
3       Q.   You may go ahead with your answer, if you're not
4   done.
5       A.   He stated that his agreement with Mr. Lippard that
6   was produced -- again, I'm going from memory.  The agreement --
7   the listing agreement with Mr. Lippard is the entire agreement
8   covering this auction with no modification or alterations.  I
9   believe that makes a number of events or instances
10  unexplainable or unexplained or unexplained.
11      Q.   What are the events that are unexplainable or
12  unexplained?
13      A.   Well, let's go back to the nonpayment of commission
14  on Gary Dye.
15      Q.   What does any unmade payments to Gary Dye have to do
16  with this auction?
17      A.   Well, Mr. -- I'm sorry.  The -- I apologize.
18           The noncollection of commission by Mr. Lippard from
19  Gary Dye payment.
20      Q.   What does that have to do with this auction?
21      A.   Well, the properties were offered in this auction and
22  Gary Dye forfeited the deposit or Dyall Company forfeited the
23  deposit.  Mr. Lippard did not take commission he's entitled to.
24  There must have been an alteration to the prior agreement or
25  the prior agreement was such that Mr. Lippard was not entitled
```

CERTIFICATE

STATE OF OKLAHOMA

        ss

COUNTY OF OKLAHOMA

    I, Darlene K. May, Oklahoma Certified Shorthand Reporter, certify that ALEXANDER MAGID was sworn by me to testify the truth; that the deposition was taken by me in stenotype and thereafter transcribed, and is a true and correct transcript of the testimony of the witness; that the deposition was taken on the 11th day of November, 2014, at Abowitz, Timberlake & Dahnke, P.C., 105 North Hudson, Tenth Floor, in the City of Oklahoma City, County of Oklahoma, State of Oklahoma; that I am neither attorney for nor relative of either said parties, or otherwise interested in the event of said action.

    IN WITNESS WHEREOF, I have hereunto set my hand and official seal on this, the 18th day of November, 2014.

/s/ Darlene K. May
Darlene K. May, RPR/CSR-1952
Oklahoma Certified Shorthand Reporter