## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) ZHN, LLC,                    )
                                 )
         Plaintiff,              )
                                 )
v.                               )        Case No. CIV-12-1289-M
                                 )
(1) RANDY MILLER, LLC;           )
(2) RANDY L. MILLER;             )
(3) LIPPARD AUCTIONEERS, INC.;   )
(4) TROY LIPPARD;                )
(5) ANGIE LIPPARD;               )
(6) BRADY LIPPARD;               )
(7) JERRY WHITNEY; and           )
(8) UNITED COUNTRY REAL          )
    ESTATE, INC., d/b/a UNITED   )
    COUNTRY AUCTION SERVICES     )
    AND UNITED COUNTRY           )
    REAL ESTATE  SERVICES,       )
                                 )
         Defendants.             )

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Murray E. Abowitz, OBA No. 00117
George W. Dahnke, OBA No. 2131
Abowitz, Timberlake & Dahnke, P.C.
105 North Hudson, Tenth Floor
Post Office Box 1937
Oklahoma City, Oklahoma 73102
Telephone:   (405) 236-4645
Facsimile:   (405) 239-2843
Email:  mea@abowitzlaw.com
gwd@abowitzlaw.com
mainmail@abowitzlaw.com

**Attorneys for Plaintiff, ZHN, LLC**

## Table of Contents

Table of Authorities ...................................................................................iii-vi

Plaintiff's Statement of Undisputed Material Facts ........................................ 1-8

I.    Plaintiff is Entitled to Judgment as a Matter of Law that Miller Violated the Oklahoma Consumer Protection Act ...................................................... 8-12

II.    Defendant Randy Miller, LLC is Precluded from Asserting a Breach of Contract Claim ...................................................................................... 12-13

III.    Defendant Randy Miller, LLC Cannot Show That it Has Sustained any Damage .............................................................................................. 13-20

IV.    Alternatively, Defendant Miller, LLC's Counterclaims for Damages Should be Stricken for Failure to Comply with Fed. R. Civ. P. 26 ................... 20-24

V.    Plaintiff ZHN, LLC is Not Liable to Defendant Lippard Auctioneers, Inc. for Breach of Contract .......................................................................... 24-27

Relief Requested ........................................................................................... 27

Certificate of Service....................................................................................... 29

## Exhibits

Exhibit No. 1: Agreement between Millard and Lippard Auctioneers, LLC.

Exhibit No. 2: Deposition of Troy Lippard

Exhibit No. 3: Deposition of Alex Magid

Exhibit No. 4: Auction Brochure

Exhibit No. 5: Mineral Deed

Exhibit No. 6: Deposition of Randy Miller

Exhibit No. 7: Deposition of Brady Lippard

Exhibit No. 8: Articles of Organization of T. Turner Investments, LLC

Exhibit No. 9: Unexecuted Operating Agreement

Exhibit No. 10: T. Turner Investments, LLC Notes

Exhibit No. 11:  Bidder List

Exhibit No. 12:  NAA Official Statement Concerning the Proper Ethical Conduct
                 for Absolute Auctions of Real Estate

Exhibit No. 13:  Texas Auction Academy, #00143

Exhibit No. 14:  Deposition of Jerry Whitney

Exhibit No. 15:  Deposition of Carol Haygood

Exhibit No. 16:  Clerking Change Log

Exhibit No. 17:  Deposition of Angie Lippard

Exhibit No. 18:  Contract, 05-03-2012

Exhibit No. 19:  Contract, 05-04-2012

Exhibit No. 20:  Supplemental Agreement

Exhibit No. 21:  Letter from Tack to Miller and Lippard, 07-10-2012

Exhibit No. 22:  Letter from Lippard to Tack, 07-11-2012

Exhibit No. 23:  Letter from Tack to Miller and Lippard, 07-13-2014

Exhibit No. 24:  Letter from Tack to Miller and Lippard, 08-02-2012

Exhibit No. 25:  Letter from Hodgden to Novotny, 08-14-2012

Exhibit No. 26:  Letter from Tack to Hodgden and Lippard, 09-12-2012

Exhibit No. 27:  E-mails from Hodgden, 09-26-2012

Exhibit No. 28:  E-mail from Lippard, 11-20-2012

Exhibit No. 29:  Letter from Hodgden to Abowitz and proposed Release of Earnest
                 Money, 11-21-2012

Exhibit No. 30:  Release of Earnest Money with Reservation of Rights

Exhibit No. 31:  E-mails with Bolz, 01-07-2013

Exhibit No. 32:  E-mail from Bolz, 01-18-2014

## Table of Authorities

### United States Circuit Court of Appeals Cases

Diaz v. Paterson, 547 F.3d 88, 97-98 (2d Cir. 2008) ................................................. 15, 16

Enerdyne Corp. v. Wm. Lyon Dev. Co., 488 F.2d 1237, 1239-40 (10th Cir. 1973) ....... 25

Fulton v. L & N Consultants, Inc., 715 F.2d 1413, 1420 n.8 (10th Cir. 1982) .......... 25, 26

Jacobsen v. Deseret Book Co., 287 F.3d 936, 954 (10th Cir. 2002) ............................... 24

Mooring Capital Fund, LLC v. Knight, 388 F. App'x 814, 827 (10th Cir. 2010) ........... 15

Smith v. Gibraltar Oil Company, 254 F.2d 518, 522 (10th Cir.) ...................................... 25

Specialty Bevs., L.L.C. v. Pabst Brewing Co.,
    537 F.3d 1165, 1178 (10th Cir. 2008) ...................................................................... 11,17

Title Guar. & Ins. Co. v. Campbell,
    106 N.M. 272, 742 P.2d 8, 13 (N.M. Ct. App. 1987) .................................................. 16

United States v. Jarvis, 499 F.3d 1196, 1202-03 (10th Cir. 2007) ................................... 16

Williams v. Engler, 46 N.M. 454, 131 P.2d 267 (1942) ................................................... 25

Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,
    170 F.3d 985, 993 (10th Cir. 1999). ........................................................................... 22

### United States Supreme Court

Connecticut v. Doehr, 501 U.S. 1, 29, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991) ............. 15

Kirby Forest Indus. v. United States, 467 U.S. 1, 15, 104 S.Ct. 2187 ............................. 16

### United States District Court Cases

Albertson v. Raboff, 46 Cal. 2d 375, 408, 295 P.2d 405 (1956) ...................................... 16

Bays Exploration, Inc. v. PenSa, Inc.,
    2011 U.S. Dist. LEXIS 20813, *43 (W.D. Okla. Mar. 2, 2011) ............................. 15, 20

Beneficial Living Systems, Inc. v. Am. Cas. Co. of PA, 08—cv—01980-LTB-MJW,
    2009 U.S. Dist. LEXIS 80965, 2009 WL 3497780, at *3 (D. Colo. 2009) .................... 22

Bradley v. Denver Health & Hosp. Auth.,
    2010 U.S. Dist. LEXIS 85870 (D. Colo. Mar. 22, 2010) ............................................ 22

Calpine Constr. Mgmt. Corp. v. Gastech Eng'g Corp.,
    2006 U.S. Dist. LEXIS 74816, *6 (N.D. Okla. Oct. 13, 2006) ..................................... 13

Cont'l Coal, Inc. v. Cunningham,
    2008 U.S. Dist. LEXIS 35318, 15-16 (D. Kan. Apr. 28, 2008)

Cuenca v. Univ. of Kan., No. 98-4180-SAC,    2001 U.S. Dist. LEXIS 9942, 2001 WL
    789404, at *3 (D. Kan. May 14, 2001) ........................................................... 21

Duggins v. Simons, 517 S.W.2d 82, 97 (Mo. 1974) ....................................................... 25

Hirpa v. IHC Hosps., Inc., 149 F. Supp.2d 1289, 1294-95 (D. Kan. 2001) .................... 21

Nasir v. Fischer, 2012 U.S. Dist. LEXIS 89313, 7 (N.D. Okla. June 28, 2012). ............. 17

Pre-Paid Legal Servs. v. Harrell,
    2007 U.S. Dist. LEXIS 40789 (E.D. Okla. May 30, 2007) .......................................... 22

Rice v. West End Motors Co., 905 S.W.2d 541, 542 (Mo.App. 1995) ........................... 15

## Oklahoma State Court Cases

Digital Design Grp., Inc. v. Info. Builders, Inc., 2001 OK 21, ¶ 33, 24 P.3d 834, 843 ... 15

Gibson Oil Co. V. Hayes Equip. Mfg. Co., 21 P.2d 17, 19 (Okla. 1933) ........................ 11

Florafax Int'l v. Gte Mkt. Res., 1997 OK 7, ¶ 42, 933 P.2d 282, 296 .............................. 17

Fowler v. Lincoln County Conservation District,
    2000 OK 96, 15 P. 3d 502, 507 (Okla. 2000) ......................................................... 11,17

King v. Board of Regents, Claremore Junior College,
    1975 OK 139, 541 P.2d 836, 841 ........................................................................ 12

Levy v. Gross, 46 Okl. 626, 149 P. 237 ......................................................................... 27

Miller v. Dittmeier, 1955 OK 354, ¶ 12, 290 P.2d 765, 768 ........................................... 27

Morford v. Eberly & Meade, Inc., 879 P.2d 841, 843 (Okla. Ct. App. 1994) ................ 16

Reeser v. Crawford, 147 Okla. 53, 294 P. 181 .................................................. 25

Rogers v. Goodwin, 1953 OK 45, 208 Okla. 110, 253 P.2d 844................................ 12, 13

Roring v. Hoggard, 326 P.2d 812, (Okla. 1958) (Syl. 1 & 2) .......................... 12

Pitco Prod. Co. v. Chaparral Energy, Inc., 63 P.3d 541, 545 (Okla.2003) ..................... 14

Sanders v. Matthews, 157 Okla. 223, 224, 12 P.2d 873, 874 (1932) .............................. 25

Walker v. Telex Corp., 583 P.2d 482, 485 (Okla .1978) ................................. 14

**Tennessee Court of Appeals**

Clark v. Wright, 699 S.W.2d 174, 176-177 (Tenn. Ct. App. 1985) .................................. 26

Turnure v. Poss, 12 Tenn. App. 519, 520 (1931) .............................................. 26

**Oklahoma State Statutes**

15 O.S. § 59 .......................................................................... 11

15 O.S. §§ 751-763 ................................................................... 8

15 O.S. § 752 ........................................................................ 9

15 O.S. § 752(2) ..................................................................... 9

15 O.S. § 752(13) ................................................................... 11

15 O.S. § 753(8), (11) and 20 ........................................................ 9

21 O.S. § 1506 ...................................................................... 10

12 O.S. § 2004.2 .................................................................... 16

23 O.S. § 21......................................................................... 17, 18

**Federal Rules of Civil Procedure**

Fed. R. Civ. Rule 26, 26(a)(1)(A)(iii), Fed. R. Civ. 26(a)(1)(C) ..................... 21

Fed. R. Civ. Rule 37 ................................................................. 21

Fed. R. Civ. P. 56 ................................................................... 27

## **Other Authorities**

7 Am.Jur.2d, Auctions and Auctioneers § 36 ................................................................. 11

34 *Rocky Mt. Min. L. Inst.* 17, 17.05(3) (1988) ................................................................. 11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) ZHN, LLC,                              )
                                           )
      Plaintiff,                    )
                                           )
v.                                         )    Case No. CIV-12-1289-M
                                           )
(1) RANDY MILLER, LLC;                     )
(2) RANDY L. MILLER;                       )
(3) LIPPARD AUCTIONEERS, INC.;             )
(4) TROY LIPPARD;                          )
(5) ANGIE LIPPARD;                         )
(6) BRADY LIPPARD;                         )
(7) JERRY WHITNEY; and                     )
(8) UNITED COUNTRY REAL                    )
    ESTATE, INC., d/b/a UNITED            )
    COUNTRY AUCTION SERVICES              )
    AND UNITED COUNTRY                    )
    REAL ESTATE  SERVICES,                )
                                           )
      Defendants.                     )

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff ZHN, LLC and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully moves this Court for summary judgment in favor of Plaintiff on the Counterclaims of Defendant Lippard Auctioneers, Inc. and Defendant Randy Miller, LLC.  In addition, Plaintiff seeks summary judgment on its claim against Defendants that they have violated the Oklahoma Consumer Protection Act.

In support of this Motion, Plaintiff states as follows:

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     Defendant Lippard Auctioneers, Inc. ("Defendant Lippard") conducted an absolute auction on May 3, 2012 (the "First Day"), and May 4, 2012 (the "Second Day"), to sell surface acres and minerals purportedly owned by Defendant Randy Miller, LLC ("Defendant Miller, LLC"). (Ex. 1, Agreement between Miller and Lippard Auctioneers, Inc.; Ex. 2, Depo. of T. Lippard, pgs. 36-37).

2.     Miller admitted in his Answer to Plaintiff's Third Amended Complaint that Lippard was Miller's agent at the auction. (Doc. #78, Miller's Answer to Plaintiff's Third Amended Complaint, ¶ 13).

3.     Alex Magid was bidding on behalf of Plaintiff ZHN, LLC ("Plaintiff"), an Oklahoma Limited Liability Company of which Mr. Magid was the only member. (Ex. 3, Depo. of Magid, pg. 22-23).

4.     Miller advertised that 3,600 mineral acres would be sold at the May 3-4, 2012 absolute auction. (Ex. 4, Brochure).

5.     In December 2011, Randy Miller, LLC, sold those mineral acres to Dye Oil Company; reserving 25% of mineral interest above and 50% of the mineral interest below the Mississippi production zone, creating a situation that 3,600 mineral acres were not available for sale. (Ex. 5, Mineral Deed; Ex. 6, Depo. of Randy Miller, pg. 13-15).

6.     That information was not set forth in either the brochure, or communicated to Alex Magid as a telephone bidder. (Ex. 3, Depo. of Alex Magid, pg. 61; Ex. 7, Depo. of Brady Lippard, pgs. 76 - 77).

7.      Lippard, a member of the NAA, testified that he, as Miller's auctioneer, under the NAA code of ethics, owed the buyers at the auction the duty of honesty, integrity and fair dealing. (Ex. 2, Depo. of Troy Lippard, pgs. 13, 19-20).

8.      On April 25, 2012, Randy Miller claims to have formed T. Turner Investments, LLC, an Oklahoma Limited Liability Corporation.   (Ex. 8, Articles of Organization of T. Turner Investments, LLC).

9.      The Limited Liability Company was to be established solely for the purpose of bidding at the auction, but had no executed operating agreement, no bank account, no tax ID and has never conducted any business.  (Ex. 9, Unexecuted Operating Agreement; Ex. 7, Depo. of Randy Miller, pg. 47-48).

10.     Miller testified that he told Lippard before the auction that he and his brother, with T. Turner Investments, wanted to bid on land at the auction. (Ex. 6, Depo. of Randy Miller, pg. 199).

11.     Troy Lippard and Randy Miller testified that the day of or the day before the auction, Randy Miller approached Troy Lippard and gave him two (2) handwritten sheets containing instructions, for Lippard to bid on certain tracts and the amount up to which he could bid. Troy Lippard and Randy Miller testified that the bidding instruction sheets where destroyed and have not been produced in this litigation.  (Ex. 2, Depo. of Troy Lippard, pgs. 111-114, 125; Ex. 6, Depo. of Randy Miller, pgs. 48-52, 72-73; Ex. 10, T. Turner Investments, LLC notes).

12.     The bids that were made by Lippard, were purported to be on behalf of T. Turner Investments, LLC.  (Ex. 2, Depo. of Troy Lippard, pg. 127; Ex. 11, Bidder List).

3

13.     Troy Lippard did not advise prospective bidders that he was bidding on behalf of T. Turner Investments, LLC. (Ex. 2, Depo. of Troy Lippard, pg. 127). Recorded auction announcements do not reveal that such an announcement was made. No auction participant identified such an announcement.

14.     Troy Lippard did not advise prospective buyers that T. Turner Investments, LLC, was at least partially controlled by Randy Miller, the controlling member of Randy Miller, LLC, who purportedly owned the property being sold at the auction. (Ex. 2, Depo. of Troy Lippard pg. 72-74).

15.     Lippard testified it would be inappropriate for Miller to bid individually or as a member of T. Turner investments because Miller was the seller. (Ex. 2, Depo. of Troy Lippard, pg. 223-224).

16.     Miller, as seller, could not bid directly or through an agent at the absolute auction. (Ex. 12, NAA Official Statement Concerning the Proper Ethical Conduct for Absolute Auctions of Real Estate; Ex. 13, Texas Auction Academy, #00143).

17.     Lippard, testified that a seller bidding at an absolute auction, or through his agent auctioneer, known as puffing or inflating bids, is unethical, not in keeping with honesty, integrity and fair dealing. (Ex. 2, Depo. of Troy Lippard, pg. 21-22).

18.     Jerry Whitney, one of the ringmen for Lippard, was also bidding for T. Turner Investments, LLC, under bidder number 420, while purportedly on the telephone. By virtue of bids made by Troy Lippard and Jerry Whitney, T. Turner Investments, LLC, was the successful bidder on a number of tracts under three (3) different bidding numbers

4

212, 420, and 188. (Ex. 14, Depo. of Jerry Whitney, pgs. 9-10; Ex. 15, Depo. of Carol Haygood, pg. 36-38, 42-43, 48).

19.     Numbers 212, 420, 188 were assigned to winning bids on lots 3, 4, 5, 7, 8, 9, 14, 20, combination 18-20, 27, 28, 30, combination 30-31, 40 combination 42-44, 52, 66. (Ex. 16, Clerking Change Log; Ex. 17, Depo. of Angie Lippard, pgs. 41, 46-48, 71, 135).

20.     None of the properties of which T. Turner Investments, LLC, was the successful bidder were closed on by T. Turner Investments, LLC. (Ex. 2, Depo. of Troy Lippard, pg. 85; Ex. 6, Depo. of Randy Miller, pgs. 60-61).

21.     Prior to this auction, Lippard has never been in an absolute auction where a property did not close and considers the number of properties that did not close in this auction unusual. (Ex. 2, Depo. of Troy Lippard, pg. 271).

22.     T. Turner Investments never signed a purchase contract or deposited earnest money, which was required by the terms of the auction. T Turner was never asked to sign a purchase contract. (Ex. 2, Depo. of Troy Lippard, pgs. 154).

23.     Angie Lippard maintained consolidated auction files in red folders for each winning bidder. The file for T. Turner was later destroyed and not produced in this litigation. (Ex. 17, Depo. of Angie Lippard, pgs. 26-27).

24.     As successful bidder, Plaintiff executed real estate contracts (the "Agreements") with Defendant Miller, LLC and deposited the required earnest money, which was accepted by the seller and the auctioneer. (Ex. 18, Contract 05-03-2012; Ex. 19, Contract 05-04-2012)

5

25.     The Agreements executed by Mr. Magid on behalf of Plaintiff required the seller to provide the evidence of marketable title with a dully certified abstract 25 days prior to closing of June 22, for the First Day auction properties and 25 days prior to closing June 29, for the Second Day auction properties. (*Id.*)

26.     The seller was unable to provide proof of that title within those periods of time and requested an extension. (Ex. 20, Supplemental Agreement)

27.     Plaintiff did not grant the extension. (Ex. 21, Letter from Tack to Miller and Lippard, 07-10-2012)

28.     On July 10, 2012, ZHN requested a return of $173,500 of the Day 1 earnest money. (*Id.*)

29.     On July 11, 2012, Miller rejected ZHN's request for return of a portion of the Day 1 earnest money and advised he was moving forward with closing. (Ex. 22, Letter from Lippard to Tack, 07-11-2012).

30.     On July 13, 2012, ZHN advised it was not willing to let Miller keep the earnest money and advised if the earnest money was not returned by July 16, 2012, ZHN would pursue all legal remedies under the contract and the law. (Ex. 23, Letter from Tack to Miller and Lippard, 07-13-2014).

31.     On August 2, 2012, ZHN demanded "mediation concerning all issues under the contracts" as provided in the Purchase Contracts and suggested mediators. (Ex. 24, Letter from Tack to Miller and Lippard, 08-02-2012).

32.     On August 14, 2012, Miller's attorney acknowledged the mediation request (Ex. 25, Letter from Hodgden to Novotny, 08-14-2012).

33.     On September 12, 2012, ZHN, while reserving all rights under the contracts, demanded return within 5 days of the Day 1 earnest money, $189,250 and the Day 2 earnest money, $96,700  (Ex. 26, Letter from Tack to Hodgden and Lippard, 09-12-2012)

34.     Miller responded by demanding that ZHN forfeit – not retain – the earnest money. (Ex. 27, E-mails from Hodgden, 09-26-2012).

35.     On the day of the mediation, November 20, 2012, Lippard emailed Richardson advising, "we had a mediation today but nothing was settled. We told them to either close according to the contract price or we would give them earnest money back and they didn't want to do either.  My seller's attorney recommended that we sign the release and send back the earnest money.  We will see what happens." (Ex. 28, E-mail from Lippard, 11-20-2012).

36.     On November 21, 2012 ZHN filed this action, CIV-12-1289-M. (Doc. #1).

37.     On November 21, 2012 Miller's attorney confirmed that no agreement had been reached for ZHN to accept return of the earnest money and tendered to ZHN a proposed Release of Earnest Money signed by Miller. (Ex. 29, Letter from Hodgden to Abowitz and proposed Release of Earnest Money, 11-21-2012).

38.     On November 25, 2012, ZHN tendered a proposed Release of Earnest Money with Reservation of Rights, signed by Magid, specifically reserving all rights in this litigation (attached) and reserving all rights ZHN had against any person or entity in any way related to the contracts or the auction. (Ex. 30, Release of Earnest Money with Reservation of Rights).

39.     In January of 2013, Miller and ZHN signed Guarantee Abstract's short form Release of Earnest Money that acknowledged that Miller and ZHN "each has signed a separate Release of Earnest Money which are attached hereto, and reserving all rights each has against the other" and directed Guarantee Abstract to return the earnest money to ZHN. (Ex.31, E-mails with Bolz, 01-07-2013; Exs. 10-11, Miller's Motion for Summary Judgment, Releases of Earnest Money).

40.     On or around January 18, 2013, Guarantee Abstract wired the earnest money to ZHN. (Ex. 32, E-mail from Bolz, 01-18-2014; Ex. 9, Miller's Motion, Wire Confirmations).

## I.    PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT MILLER VIOLATED THE OKLAHOMA CONSUMER PROTECTION ACT

Plaintiff asks this Court to rule as a matter of law on the issue of liability, based upon the evidence presented in support of this motion, that the Miller Defendants ("Miller"), through their agent Lippard, violated the Oklahoma Consumer Protection Act by failing to disclose known facts about the mineral acres, by engaging in puff bidding and shill bidding on behalf of Miller and by permitting Miller, the seller, to bid at the auction that was advertised and purportedly conducted as an "absolute" auction. The Oklahoma Consumer Protection Act ("CPA"), 15 O.S. §§ 751-763, provides, in part, that "A person engages in a practice which is declared to be unlawful under the Oklahoma Consumer Protection Act when, in the course of the person's business, the person:

  8.     Advertises, knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;

8

\* \* \*

11.   Makes false or misleading statements of fact, knowingly or with reason to know, concerning the price of the subject of a consumer transaction or the reason for, existence of, or amounts of price reduction;

\* \* \*

20.   Commits an unfair or deceptive trade practice as defined in Section 752 of this title"

15 O.S. § 753(8), (11) and 20.  And 15 O.S. § 752 defines unfair or deceptive trade practices as,

13.   "Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral;

\* \* \*

14.   "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

Under the CPA, "Consumer transaction" means "the advertising, offering for sale or purchase, sale, purchase, or distribution of any services or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever located, for purposes that are personal, household, or business oriented."  15 O.S. § 752(2).  The advertising and auction of properties in the case before this Court satisfies the definition of "consumer transaction" under the CPA.

In this case, Plaintiff's evidence establishes that Miller, through his agent Lippard, violated the CPA by advertising that the properties and mineral tracts would be sold at an "absolute" auction with no intent to sell the properties and tracts as advertised.  Lippard

took bidding instructions from Miller prior to the auction, with knowledge that Miller was the seller and with knowledge that it was inappropriate for Miller to bid at the auction.   Lippard impermissibly bid on Miller's behalf during the auction.   Miller, through his agent Lippard, knowingly made false, incomplete and misleading statements of fact concerning the price of the properties and tracts offered at the auction by bidding on Miller's behalf, by puff bidding and by permitting Miller to bid.   Miller, through his agent Lippard, conducted the auction in a manner that deceived or could reasonably be expected to deceive or mislead the bidding public, including Plaintiff, to its detriment by bidding on Miller's behalf, by puff bidding and by permitting Miller to bid at the auction. Miller, through his agent Lippard, engaged in acts in violation of law and public policy that were immoral, unethical, unscrupulous and substantially injurious to the bidding public, including Plaintiff.

Miller has testified that he told Lippard prior to the auction that he, through T. Turner Investments LLC, wanted to bid at the auction.   The evidence shows that T. Turner Investments LLC is a sham entity, existing simply for the purpose of engaging in shill bidding during the auction, with no signed operating agreement, no bank account, no tax ID number, and having never conducted business before or after the auction.   The evidence shows that in spite of the fact that Lippard claims that T. Turner Investments LLC was the high bidder on more than a dozen tracts at the auction, it neither signed a purchase contract on any tract nor closed on any of the tracts. These are the hallmarks of a "mock" auction prohibited by 21 O.S. § 1506.

10

A seller may not nullify the purpose of an absolute auction by bidding himself, herself or through an agent, or by withdrawing the property from sale not satisfied with the bids. 7 Am.Jur.2d, Auctions and Auctioneers § 36.   Lippard considered it inappropriate for Miller to bid individually or through T. Turner Investments, LLC. Lippard's knowledge, as agent, is imputed to Miller, as principal.  *Gibson Oil Co. V. Hayes Equip. Mfg. Co.*, 21 P.2d 17, 19 (Okla. 1933).

Lippard also testified he had never participated in an absolute auction where a property did not close with one exception – this auction where Lippard engaged in puff bidding and shill bidding, through bidder numbers Lippard and Miller now claim are associated with T. Turner Investments, LLC.   Lest there be any doubt about the legitimacy of T. Turner Investments, LLC, Lippard's employees destroyed the T. Turner Investment, LLC auction files.

Nearly five months before the auction, Miller sold off for nearly $10,000,000 the most valuable portion of the 3,600 "mineral acres" advertised in the auction brochure. But in spite of this particular knowledge, Miller, through Lippard, advertised that 3,600"mineral acres" would be sold at the absolute auction, without disclosing the known fact that Miller had already sold valuable zones in the mineral acres. A "mineral acre" is defined as "the full mineral interest in one acre of land." 34 *Rocky Mt. Min. L. Inst.* 17, 17.05(3) (1988).  Miller's failure to disclose the known facts that he had already sold off portions of the mineral interests created a false impression and constitutes fraud as well as a violation of the CPA.  *See* 15 O.S. § 752(13) and 15 O.S. § 59; see also *Specialty Beverages, LLC v. Pabst Brewing Co.*, 537 F.3d 1165, 1179-1184 (10th Cir. 2008).

11

It is settled law in Oklahoma that a principal is liable for tortious acts of his agent even though the actions exceed the authority conferred or were willfully or maliciously committed if such acts are incidental to and in furtherance of the business of the principal. *Roring v. Hoggard,* 326 P.2d 812, (Okla. 1958) (Syl. 1 & 2). Plaintiff's evidence shows that Miller, through his agent Lippard, engaged in puff bidding on behalf of Miller at the auction and has violated the Oklahoma Consumer Protection Act. Plaintiff's evidence further shows that Miller violated the Consumer Protection Act by failing to disclose in the advertising materials the known fact that Miller had sold off the most valuable portion of the purported 3,600 "mineral acres" offered at the absolute auction. The Court should enter judgment in favor of Plaintiff as to liability only on Plaintiff's claims against Randy Miller and Randy Miller, LLC for violation of the Oklahoma Consumer Protection Act.

## II. DEFENDANT RANDY MILLER, LLC IS PRECLUDED FROM ASSERTING A BREACH OF CONTRACT COUNTERCLAIM.

Defendant Randy Miller, LLC ("Defendant Miller, LLC") is precluded from bringing a counterclaim against Plaintiff for breach of contract because Defendant Miller, LLC has waived this right by acting in a manner which prevented Plaintiff's performance. Under Oklahoma law, "[w]hen one party to a contract acts in a manner which prevents performance by the adverse party, such party waives his right to require the adverse party to perform." *King v. Board of Regents, Claremore Junior College,* 1975 OK 139, 541 P.2d 836, 841 (citing *Rogers v. Goodwin,* 1953 OK 45, 208 Okla. 110, 253

P.2d 844 ). *See also, Calpine Constr. Mgmt. Corp. v. Gastech Eng'g Corp.*, 2006 U.S. Dist. LEXIS 74816, *6 (N.D. Okla. Oct. 13, 2006).

According to the express terms of the Agreements executed by both Defendant Miller, LLC and Plaintiff, Defendant Miller, LLC – acting as the seller of the real property covered by the Agreements (the "Property") – was required to provide duly certified abstracts as evidence of marketable title by or before twenty-five (25) days prior to closing on June 22, for the First Day auction properties and by or before twenty-five (25) days prior to closing on June 29, for the Second Day auction properties. Plaintiff fulfilled its obligations under the Agreements by depositing the earnest money, which approximated $285,000.00. Thereafter, Defendant Miller, LLC failed to provide the required abstracts within the allotted periods of time.

Defendant Miller, LLC's failure to comply with the express terms of the Agreements interfered with and operated to prevent further performance by Plaintiff. Moreover, Defendant Miller, LLC's failure to comply with the terms of the contract has, under Oklahoma law, eliminated its right to hold Plaintiff liable under the Agreements. Thus, as a matter of law, Defendant Miller, LLC is precluded from asserting a breach of contract claim against Plaintiff.

## III. DEFENDANT RANDY MILLER, LLC CANNOT SHOW THAT IT HAS SUSTAINED ANY DAMAGE.

In addition to being precluded from bringing a claim for breach of contract against Plaintiff, Defendant Miller, LLC is also precluded from seeking actual damages as a result of an alleged breach of the Agreements. Pursuant to the express language of the

13

Agreements that Defendant Miller, LLC complains have been breached, Defendant

Miller, LLC is limited to only two remedies: (1) liquidated damages in the amount of the

earnest money initially deposited by Plaintiff; and (2) specific performance. Paragraph

XIV of the Agreements provides in pertinent part:

> **DEFAULT**: (a) If the Buyer wrongfully refuses to close, the
> Seller and Buyer agree that since it is Impracticable and
> extremely difficult to fix the actual damages sustained, the
> Earnest Money shall be forfeited as liquidated damages to the
> Seller . . . The seller may, at his option seek specific
> performance.

Ex. 18, Contract 05-03-2012; Ex. 19, Contract 05-04-2012.

Despite the express limitation set forth in the Agreements, Defendant Miller, LLC

has asserted counterclaims for alleged actual damages. Under Oklahoma law, "[t]he

construction of an unambiguous contract is a matter of law for the court." *Walker v. Telex

Corp.*, 583 P.2d 482, 485 (Okla .1978); see *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63

P.3d 541, 545 (Okla.2003). Moreover, whether a contract is ambiguous and requires

extrinsic evidence to clarify the doubt is also a question of law for the court. *Pitco*, 63

P.3d at 545. "A contract is ambiguous if it is reasonably susceptible to at least two

different constructions." *Pitco*, 63 P.3d at 545–46. Defendant Miller, LLC's contract with

Plaintiff is clear and unambiguous – it provides Defendant Miller, LLC with only two

options, neither of which has been sought by Defendant Miller, LLC in this matter.

Even if Defendant Miller, LLC were entitled to seek actual damages, which

Plaintiff maintains that it is not, Defendant Miller, LLC is (and has been) unable to

14

demonstrate or substantiate damages allegedly sustained as a result of Plaintiff's alleged breach of the Agreements. The paucity of damage information that has been produced does not establish the measure of damages to which Defendant Miller, LLC asserts it is entitled. Well-settled Oklahoma law requires that, in order to recover for an alleged breach of contract, a party must not only prove formation of a contract and breach thereof, but that party must also prove "damages as a direct result of the breach." *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843 (emphasis added). *See also, Bays Exploration, Inc. v. PenSa, Inc.*, 2011 U.S. Dist. LEXIS 20813, *43 (W.D. Okla. Mar. 2, 2011). Proof of damages is an essential element of a claim for breach of contract. *Id.* at n.23 (citing *Rice v. West End Motors Co.*, 905 S.W.2d 541, 542 (Mo.App. 1995)); *Mooring Capital Fund, LLC v. Knight*, 388 F. App'x 814, 827 (10th Cir. 2010).

First, Defendant Miller, LLC has suffered no loss during the pendency of this litigation because the value of the real property at issue (the "Property") has not been impaired.[1] Although Plaintiff has recorded a notice of lis pendens on the Property, "the effect of [lis pendens] is simply to give notice to the world of the remedy being sought in the lawsuit itself and which creates no additional right in the property on the part of the plaintiff." *Diaz v. Paterson*, 547 F.3d 88, 97-98 (2d Cir. 2008) (internal quotations omitted) (citing *Connecticut v. Doehr*, 501 U.S. 1, 29, 111 S. Ct. 2105, 115 L. Ed. 2d 1

---

[1] It is worth noting that, in addition to Defendant Miller's property interest remaining unaffected by any alleged breach of contract, the value of the Property has actually increased since the Agreements were executed.

(1991) (Rehnquist, C.J., concurring)). *See also, United States v. Jarvis*, 499 F.3d 1196, 1202-03 (10th Cir. 2007) (citing *Title Guar. & Ins. Co. v. Campbell*, 106 N.M. 272, 742 P.2d 8, 13 (N.M. Ct. App. 1987) ("The purpose of recording a notice of lis pendens on a piece of real property is to provide constructive notice to subsequent purchasers and encumbrancers of litigation affecting the title to [the] real property."(internal quotations omitted)); *Morford v. Eberly & Meade, Inc.*, 879 P.2d 841, 843 (Okla. Ct. App. 1994)(citing *Albertson v. Raboff*, 46 Cal. 2d 375, 408, 295 P.2d 405 (1956))(the effect of a lis pendens is "to give constructive notice of all the facts apparent upon the face of the pleading").

Because the effect filing of a lis pendens is merely a vehicle to provide notice, "the owner of property subject to a lis pendens continues to be able to inhabit and use the property, receive rental income from it, enjoy its privacy, and even alienate it." *Diaz*, 547 F.3d at 98 (emphasis added) (citing *Kirby Forest Indus. v. United States*, 467 U.S. 1, 15, 104 S.Ct. 2187 (1984)). Pursuant to Okla. Stat. tit.12, § 2004.2, the property owner's interest in property against which a notice of lis pendens has been recorded is not impaired unless the adverse party ultimately prevails in the subject litigation. *Id.*

Defendant Miller, LLC has not demonstrated, nor can it, that its interest in the Property has been impaired or that it has suffered damage because the Property may still be inhabited, used, enjoyed, rented or even alienated. *Diaz*, 547 F.3d at 98.

Furthermore, Defendant Miller, LLC cannot recover damages because it is unable to identify any actual damage sustained as a result of any alleged breach of the Agreements by Plaintiff. Despite Plaintiff's discovery requests, Defendant Miller, LLC

16

has failed to produce any damage calculations substantiating its damages claim. "Damages claimed for a breach of contract <u>cannot be recovered</u> unless they are clearly ascertainable, both in their nature and origin, and it must be made to appear that they are <u>the natural and proximate consequence</u> of the breach of the contract and not speculative and contingent." *Fowler v. Lincoln County Conservation District*, 2000 OK 96, 15 P. 3d 502, 507 (Okla. 2000) (citation omitted and emphasis added). *See also* Okla. Stat. tit. 23, § 21 ("No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin."). "In essence, what a plaintiff must show for the recovery of lost profits is sufficient certainty that reasonable minds might believe from a preponderance of the evidence that such damages were actually suffered." *Florafax Int'l v. Gte Mkt. Res.*, 1997 OK 7, ¶ 42, 933 P.2d 282, 296. *See also, Specialty Bevs., L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1178 (10th Cir. 2008); *Nasir v. Fischer*, 2012 U.S. Dist. LEXIS 89313, 7 (N.D. Okla. June 28, 2012).

Here, Defendant Miller, LLC has failed to put forward sufficient evidence that it has suffered damages. In his deposition, Randy Miller, the sole member of Defendant Miller, LLC, could not articulate the amount of alleged damages sustained or any method or means by which Defendant Miller, LLC's alleged damages had been ascertained. *Deposition of Randy Miller* ("Exhibit 18"), 108:16 – 110:2, 111:8-16.

In attempting to conjure a measurement of damages, Randy Miller has considered factors which have no bearing or relation to the breach alleged by Defendant Miller, LLC. First, Mr. Miller complains that he was unable to timely plant a crop or put the subject property to some other agricultural use because of Plaintiff's purported actions in

17

having "dragged" things out. However, the discussions between Plaintiff and Defendant Miller, LLC were only "dragged" out because of Defendant Miller, LLC's initial failure to deliver the abstracts as required under the Agreements.

Second, Mr. Miller speculates that Defendant Miller, LLC was purportedly unable to immediately lease the subject property because of the pending litigation involving the Property. However, Defendant Miller, LLC's inability to immediately lease the Property is not a result of any act of Plaintiff, but rather a result of the initial failure of Defendant Miller, LLC to properly deliver the abstracts to Plaintiff as required by the Agreements. Moreover, an alleged impairment to the ease or immediacy with which one can lease property for agricultural purposes is not contingent on any act naturally or proximately attributable to Plaintiff. Such "damage" is not clearly ascertainable in either nature or origin as required by Oklahoma law. Okla. Stat. tit. 23, § 21. Even if Defendant Miller, LLC experienced some degree of difficulty in leasing the Property as a result of the present litigation, Plaintiff should not be held liable for having properly employed statutorily prescribed methods of providing notice (i.e., the recording of a notice of lis pendens) to the public of the pendency of litigation surrounding the Property.

Finally, Mr. Miller has stated that, because of the pending litigation, he believes the rate at which he was eventually able to lease the subject property was not reflective of its actual lease value. "[T]o recover lost profits, a plaintiff is required to present evidence of the lost profits with "'sufficient certainty that reasonable minds might believe from a preponderance of the evidence that such damages were actually suffered.'" *Dealer Express Mktg., L.L.C. v. Autodealer Express, L.L.C.*, 2010 U.S. Dist. LEXIS 27714, *12

18

(W.D. Okla. Mar. 24, 2010) (citing *Boatsman v. Southwestern Bell Yellow Pages, Inc.*, 2001 OK CIV APP 98, 30 P. 3d 1174, 1177 (Okla. Civ. App. 2001). Mr. Miller's mere belief that Defendant Miller, LLC's potential lease earnings were reduced by Plaintiff's alleged conduct is insufficient to provide the "sufficient certainty" that such damages were actually suffered as required by Oklahoma law. Even if Defendant Miller, LLC could put forward evidence demonstrating that the lease value of the Property was diminished as a result of the present litigation, by recording a notice of lis pendens against the Property, Plaintiff has availed itself of a proper, statutorily appropriate method of providing public notice of the pendency of litigation surrounding the Property.

Defendant Miller, LLC is incapable of showing that its interest in the Property has been impaired or that it has suffered damage by any alleged acts by Plaintiff because the Property may still be inhabited, used, enjoyed, rented or even alienated. At best, the damages sought are not grounded on a definite standard, but rather are supported by speculation, conjecture and surmise. "[U]nder Oklahoma law, the amount awarded for breach of contract 'must be ascertainable in some manner other than by mere speculation, conjecture or surmise, and by reference to some definite standard.'" *Old West Annuity and Life Ins. Co. v. Progressive Closing & Escrows, Inc.*, 74 F. App'x 4, 8 (10th Cir.2003) (unpublished opinion) (quoting *John A. Henry & Co., Ltd. v. T.G. & Y. Stores Co.*, 941 F.2d 1068, 1071 (10th Cir.1991)); *Webco Indus. v. Diamond*, 2012 U.S. Dist. LEXIS 170381, 19-20 (N.D. Okla. Nov. 30, 2012) *Diaz*, 547 F.3d at 98. Because Defendant Miller, LLC cannot produce any calculation of or substantiation for its damages claim,

Defendant Miller, LLC has not demonstrated, with any certainty, that reasonable minds might believe that damages were actually suffered.

Where a party cannot show that it has suffered any damage from an alleged breach of contract, summary judgment is proper. *See, Kutcher v. Stone*, 2014 U.S. App. LEXIS 8464, **3-5 (10th Cir. Okla. 2014) (Affirming district court's grant of summary judgment where there was no evidentiary support for damages alleged to have been suffered); *Bays Exploration, Inc. v. PenSa, Inc.*, 2011 U.S. Dist. LEXIS 20813, *44 (W.D. Okla. Mar. 2, 2011) ("To overcome Bays Energy's summary judgment motion as to this claim, PenSa must submit admissible evidence sufficient to show a material factual dispute regarding its contention that it has been damaged by the breach of the [contract]"); *Watson v. Farmers Ins. Co.*, 2014 U.S. Dist. LEXIS 73155, *24 (N.D. Okla. May 29, 2014) (Motion for summary judgment on plaintiff's contract claim granted because, *inter alia,* plaintiff could not show that he had suffered damages); *Webco Indus. v. Diamond*, 2012 U.S. Dist. LEXIS 170381, **18-20 (N.D. Okla. Nov. 30, 2012) (Even if plaintiff could have demonstrated that a breach of contract occurred, plaintiffs claim failed because there was no evidence that it had been damaged).

Therefore, because Defendant Miller, LLC's interest in the Property remains legally unimpaired and because Defendant Miller, LLC cannot identify with sufficient certainty that reasonable minds might believe that it has suffered any damages, summary judgment is proper against Defendant Miller, LLC since it is unable to establish an essential element of its counterclaims for breach of contract against Plaintiff.

## IV. ALTERNATIVELY, DEFENDANT MILLER, LLC'S COUNTERCLAIMS FOR DAMAGES SHOULD BE STRICKEN FOR FAILURE TO COMPLY WITH FED. R. CIV. P. 26.

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, a party is required to provide "a computation of each category of damages claimed by the disclosing party-- who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." *Id.* at 26(a)(1)(A)(iii)(emphasis added). This initial disclosure must be made "at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order[.]" *Id.* at 26(a)(1)(C). "A party is not excused from making its disclosures because it has not fully investigated the case[.]" *Id.* at 26(a)(1)(E). Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that a party who, without substantial justification, fails to make the required disclosures shall not, unless such failure is harmless, be permitted to use as evidence at trial any witness or information not so disclosed. "Unless a party shows that failure to comply with Rule 26(a) or 26(e)(1) or (2) was substantially justified or harmless, the Court must exclude the undisclosed evidence at trial." *Cont'l Coal, Inc. v. Cunningham*, 2008 U.S. Dist. LEXIS 35318, 15-16 (D. Kan. Apr. 28, 2008) (Citing Fed. R. Civ. P. 37(c)(1); *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998); *Cuenca v. Univ. of Kan.*, No. 98-4180-SAC, 2001 U.S. Dist. LEXIS 9942, 2001 WL 789404, at *3 (D. Kan. May 14, 2001); *Hirpa v. IHC Hosps., Inc.*, 149 F. Supp.2d 1289, 1294-95 (D. Kan. 2001).

Additionally, the Tenth Circuit has provided that, when determining whether a Rule 26(a) violation is justified or harmless, a district court should consider "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). *See also, Pre-Paid Legal Servs. v. Harrell*, 2007 U.S. Dist. LEXIS 40789 (E.D. Okla. May 30, 2007) (*Woodworkers Supply* factors sufficiently met, to strike damages claims that had been asserted).

In *Bradley v. Denver Health & Hosp. Auth.*, 2010 U.S. Dist. LEXIS 85870 (D. Colo. Mar. 22, 2010), the court found that "Plaintiff's failure to disclose these damages in the Scheduling Order or in discovery suggested to Defendant that Plaintiff was abandoning its pursuit of those damages." *Id.* at *10 (citing *Beneficial Living Systems, Inc. v. Am. Cas. Co. of PA*, 08—cv—01980-LTB-MJW, 2009 U.S. Dist. LEXIS 80965, 2009 WL 3497780, at *3 (D. Colo. 2009). The court further held that "Plaintiff's untimely attempt to revive his claim to compensatory damages, in a deficient manner insofar as it is still void of any computation or documentary support, amounts to a significant shift in the litigation posture which Defendant could not have reasonably foreseen." *Id.* at *11. Such behavior was found to prejudice the defendant since it had not been able to "conduct any discovery or designate any witnesses with respect to a claim for compensatory damages." *Id.* Moreover, because reopening discovery into the damages claim would have cast a "significant disruption . . . over the litigation, and

22

because Plaintiff repeatedly failed to disclose the claim, along with the continuing void of any computation or evidence in support thereof, the court finds that Plaintiff's failure to disclose his compensatory damages claim was not harmless." *Id.* at *13. For such reasons, the court granted the defendant's motion to strike the claim for compensatory damages. *Id.*

Here, Defendant Miller, LLC has failed to comply with Rule 26 disclosure requirements. As of this date, Defendant Miller, LLC has not provided a computation of each category of damages claimed. Application of the *Woodworker's Supply* factors further supports striking Defendant Miller, LLC's damages claims. First, Plaintiff has been prejudiced because it has been denied required information about what damages Defendant Miller, LLC will seek at trial, and has been denied the ability to prepare an adequate defense to the damages claimed, including obtaining documents and testimony from third parties, obtaining additional documents and testimony if necessary, hiring expert witnesses and preparing expert reports, and collecting and preparing exhibits and testimony for trial.

Second, the prejudice cannot be cured because reopening discovery into the damages claim would cast a significant disruption over the litigation. Furthermore, because Defendant Miller, LLC has repeatedly failed to make the required disclosure and has allowed a continuing void of any computation or evidence in support thereof, its failure to comply with Rule 26 is not harmless.

With respect to the third factor, introduction of Defendant Miller, LLC's damages claim is highly prejudicial and would be tremendously disruptive at trial since Plaintiff

23

has been denied required information about what damages Defendant Miller, LLC will seek at trial. Despite the Court's authority to continue the trial date set in this matter, the Court should not ignore Defendant Miller, LLC's disregard for the express requirements of Rule 26(a).

Finally, although willfulness or bad faith in failing to disclose may not be at issue, Tenth Circuit precedent has pronounced that "good faith alone would not be enough to overcome the other factors." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 954 (10th Cir. 2002).

Therefore, Defendant Miller, LLC's damages claims should be stricken for failure to comply with the express requirements of Rule 26 of the Federal Rules of Civil Procedure. Furthermore, should this Court strike Defendant Miller, LLC's damages claims, Defendant Miller, LLC's counterclaims should be dismissed because it will be unable to establish an essential element of its counterclaims for breach of contract against Plaintiff.

## V.   PLAINTIFF ZHN, LLC IS NOT LIABLE TO DEFENDANT LIPPARD AUCTIONEERS, INC. FOR BREACH OF CONTRACT.

Defendant Lippard Auctioneers, Inc. ("Defendant Lippard") may not, as a matter of law, assert a counterclaim against Plaintiff for loss of commissions stemming from an alleged breach of the Agreements to purchase the Property because Defendant Miller, LLC, acting as the seller, engaged in conduct that prevented Plaintiff from performing under the Agreements.

24

"The general rule is that a broker has earned, and is entitled to his commission, when he has procured a purchaser who either consummates the purchase, or who is ready, able and willing to do so upon the terms given to the agent by the owner." *Enerdyne Corp. v. Wm. Lyon Dev. Co.*, 488 F.2d 1237, 1239-40 (10th Cir. 1973) (citing *Williams v. Engler*, 46 N.M. 454, 131 P.2d 267 (1942)). However, claims for unpaid commission must be brought against the proper party. In this case, Plaintiff is not the proper party.

Under well-settled law, the seller, not the buyer, bears liability for commission owed to a broker "if the purchaser's failure to execute an agreement is due to the principal's refusal to do so." *Fulton v. L & N Consultants, Inc.*, 715 F.2d 1413, 1420 n.8 (10th Cir. 1982) (citing *Smith v. Gibraltar Oil Company*, 254 F.2d 518, 522 (10th Cir.)) (emphasis added). *See also, Sanders v. Matthews*, 157 Okla. 223, 224, 12 P.2d 873, 874 (1932) (citing *Reeser v. Crawford*, 147 Okla. 53, 294 P. 181) ("where the broker finds the purchaser ready, willing, and able to pay the consideration, and offers to complete the sale within the time specified within the contract, the broker is then entitled to his commission, unless it is shown by the seller that he had a reasonable cause for not completing the transaction." (emphasis added)); *Duggins v. Simons*, 517 S.W.2d 82, 97 (Mo. 1974)("[T]he owner-principal is liable to his broker for the broker's commission where the broker has produced a buyer ready, willing, and able to purchase on the owner's terms but the consummation of the sales contract is frustrated by the seller's default in failing to deliver merchantable title[.]"(emphasis added)).

Moreover, if a broker is not a party to the contract to purchase, courts have held that he or she may not seek to enforce it against the potential buyer. In a case where the

25

buyer's fault prevented sale of property, a claim against the potential buyers has been held improper when there is no privity of contract between the buyer and the broker. *Clark v. Wright*, 699 S.W.2d 174, 176-177 (Tenn. Ct. App. 1985) (quoting *Turnure v. Poss*, 12 Tenn. App. 519, 520 (1931)).

Here, Plaintiff complied with its obligations under the Agreements until Defendant Miller, LLC's conduct prohibited it from complying further. According to the express terms of the Agreements (to which Defendant Lippard was not a party), Defendant Miller, LLC was required to provide dully certified abstracts as evidence of marketable title by or before twenty-five (25) days prior to closing on June 22, for the First Day auction properties and by or before twenty-five (25) days prior to closing on June 29, for the Second Day auction properties. <u>Plaintiff fulfilled its obligations</u> under the Agreements by depositing the earnest money, which approximated $285,595.00. Thereafter, <u>Defendant Miller, LLC failed to provide the required abstracts within the allotted periods of time.</u> Because Defendant Miller, LLC – the purported seller of the Property – failed to comply with the express terms of the Agreements, thereby interfering with and operating to prevent further performance by Plaintiff – the intended buyer – under the Agreements, Plaintiff cannot be liable for the acts of Defendant Miller, LLC which prevented sale of the Property. According to the Tenth Circuit, the acts of the seller which result in a failed sale render the seller – not a complying buyer – liable for loss of commission. *Fulton,* 715 F.2d at 1420 n.8.

Furthermore, the agreement between Defendant Lippard and Defendant Miller, LLC demonstrates that Defendant Lippard was acting <u>as Defendant Miller, LLC's agent</u>

26

in the auction of the Property. However, even if Defendant Lippard was acting as an agent for both Plaintiff and Defendant Miller, LLC - which it was not – Oklahoma law dictates that "[a] broker, acting for both parties in effecting a deal, can recover compensation from neither, unless his double employment <u>was known and assented to</u> by both parties to the transaction." *Miller v. Dittmeier*, 1955 OK 354, ¶ 12, 290 P.2d 765, 768 (citing Levy v. Gross, 46 Okl. 626, 149 P. 237). There is no evidence, whatsoever, indicating Plaintiff's knowledge of or assent to Defendant Lippard acting as Plaintiff's agent. Therefore Plaintiff cannot be held liable for Defendant Lippard's alleged loss of commission.

Because Defendant Lippard cannot establish that Plaintiff's conduct violated the Agreements, because Defendant Miller, LLC's conduct violated the Agreements and prevented Plaintiff's further compliance therewith and because Defendant Lippard was auctioning the Property on behalf of the seller, Defendant Miller, LLC, and not acting as Plaintiff's agent, Defendant Lippard's counterclaim against Plaintiff for loss of commission resulting from an alleged breach of contract must fail as a matter of law.

## RELIEF REQUESTED

Pursuant to Fed. R. Civ. P. 56, ZHN, LLC prays that this Court grant it judgment in all respects on the Counterclaims of Miller, LLC and Lippard Auctioneers. Further, the Plaintiff, ZHN moves for judgment on liability for its claim against the Miller Lippard Defendants for violation of the Oklahoma Consumer Protection Act.

Respectfully submitted,


/s/ Murray E. Abowitz
Murray E. Abowitz, OBA No. 00117
George W. Dahnke, OBA No. 2131
Abowitz, Timberlake & Dahnke, P.C.
105 North Hudson, Tenth Floor
Post Office Box 1937
Oklahoma City, Oklahoma 73102
Telephone:    (405) 236-4645
Facsimile:    (405) 239-2843
Email:  mea@abowitzlaw.com
        gwd@abowitzlaw.com
        mainmail@abowitzlaw.com

**Attorneys for Plaintiff, ZHN, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of January, 2015, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic filing to the following ECF registrants:

Randy J. Long          randy@nwoklaw.com
Clint A. Claypole      clint@nwoklaw.com

**Attorneys for Defendants, Randy Miller, LLC**
**and Randy L. Miller, Individually**

Timothy S. Harmon      timharmon@holdenlitigation.com
Shawna L. McCalip      ShawnaMccalip@HoldenLitigation.com

**Attorneys for Defendants, Lippard Auctioneers, Inc.**
**Troy Lippard, Angie Lippard, Brady Lippard,**
**Jerry Whitney and United Country Real Estate, Inc.**
**d/b/a United Country**

/s/ Murray E. Abowitz
Murray E. Abowitz